IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cr-76 |
| | ) | Civil Action No. 1:16-cv-688 |
| JAMES THOMAS LINK | ) | |

## MEMORANDUM OPINION

At issue in this 18 U.S.C. § 2255 habeas petition is whether defendant's convictions and sentences for two counts of brandishing a firearm during a crime of violence should be vacated on the basis of (i) an alleged "sentencing miscalculation," or (ii) the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated the residual clause of 18 U.S.C. § 924(e). For the reasons that follow, the petition must be denied.

### I.

On March 12, 2014, defendant James Thomas Link pled guilty to two counts of brandishing a firearm during a "crime of violence"—namely, armed bank robbery—in violation of 18 U.S.C. § 924(c).[1] On the first § 924(c) count, defendant was sentenced to 102 months'

---

[1] Section 924(c)(3) defines a "crime of violence" as any felony:

> (A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subsection (A) and subsection (B) of § 924(c)(3) are commonly referred to as the "force clause" and the "residual clause," respectively. *See United States v. McNeal*, 818 F.3d 141, 151-52 (4th Cir. 2016).

imprisonment. On the second § 924(c) count, defendant was sentenced to a consecutive term of 318 months' imprisonment, for a total term of 420 months of incarceration.

Two years later, defendant, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate and set aside his sentences and convictions. Defendant asserts two grounds for his motion: (i) that a "sentencing miscalculation" occurred, resulting in the imposition of an "incorrect sentence" under the terms of defendant's plea agreement, and (ii) that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), operates to invalidate § 924(c)'s residual clause and thus, by extension, defendant's § 924(c) convictions. The government disagrees, contending (i) that defendant's "sentencing miscalculation" claim is not cognizable under § 2255 and is barred by the doctrine of procedural default, and (ii) that defendant's convictions and sentences are based not on § 924(c)'s residual clause, but on § 924(c)'s force clause, a provision unaddressed and unaffected by the Supreme Court's decision in *Johnson*.

Because the matter has been fully briefed and the facts and law are fully set forth in the existing record, neither oral argument nor an evidentiary hearing would aid the decisional process.[2] Accordingly, the matter is now ripe for disposition. For the reasons stated below, defendant's motion must be denied.

### A.

Defendant's sworn Statement of Facts accompanying his plea agreement describes a crime spree in which defendant, along with co-defendants James Larry McNeal and Alphonso

---

[2] Importantly, § 2255(b) provides that a hearing is unnecessary where, as here, "the motion and the files of the case conclusively show that the prisoner is entitled to no relief[.]" 18 U.S.C. § 2255(b).

Stoddard, robbed or attempted to rob four banks in Maryland and Northern Virginia from October to December, 2013. The spree began on October 29, 2013, when defendant attempted an armed bank robbery at the Wells Fargo Bank branch located at 110 Congressional Lane in Rockville, Maryland. That day, McNeal drove defendant and Stoddard to the Wells Fargo Bank branch. Defendant and Stoddard entered the bank through the front door, which defendant then propped open with a sand-filled sock. Once inside the bank, defendant displayed a handgun and shouted, "Everyone get down and don't push the button." Stoddard jumped over the teller counter and unsuccessfully tried to take cash from the teller drawers. As Stoddard jumped back over the counter to leave, defendant fired one round from his handgun into the bank ceiling. The two then fled.

The very next day, October 30, 2013, McNeal drove Stoddard and defendant to the Bank of Georgetown branch located at 1850 Towers Crescent Plaza in Vienna, Virginia. After defendant and Stoddard entered the bank, Stoddard vaulted over the counter toward the victim teller, demanding, "Give me the money." For his part, defendant displayed a handgun, pointing the weapon at the floor in view of the victim teller while telling Stoddard, "Get the money," and "Let's go, come on let's go." Stoddard grabbed cash from the teller drawers and placed it in a black, plastic shopping bag. Stoddard and defendant then fled the bank on foot with $3,449 in cash.

Roughly four weeks later, on November 25, 2013, defendant and his accomplices struck again. This time, McNeal drove Stoddard and defendant to the Wells Fargo Bank branch located at 2213 North Glebe Road in Arlington, Virginia. After defendant and Stoddard entered the bank lobby, defendant, brandishing a firearm, ordered the bank's customers and employees to lie down on the floor. At the same time, Stoddard jumped the teller counter and, brandishing a gun,

3

ordered the employees behind the counter to lie down. Stoddard then stuffed $19,001 in cash into his bag. As defendant and Stoddard left the bank with that money, they pushed past an 82-year-old woman, knocking her to the ground.

Defendant capped off the year and this spree with one more bank robbery. On New Year's Eve, December 31, 2013, McNeal picked up defendant and Stoddard and drove to the Wells Fargo Bank branch located at 951 South George Mason Drive in Arlington, Virginia. After defendant and Stoddard entered the bank, defendant produced a handgun and Stoddard jumped over the counter. Stoddard then took approximately $47,913 in cash from the teller drawers and stuffed it into his bag. Defendant and Stoddard fled from the bank on foot, entered the vehicle with McNeal, but failed in their attempt to drive away because they were apprehended.

### B.

On February 27, 2014, a federal grand jury indicted defendant on seven counts, including conspiracy in violation of 18 U.S.C. § 371 (Count 1), armed bank robbery in violation of 18 U.S.C. §§ 2, 2113(a) & (d) (Counts 2, 4, and 6), and brandishing a firearm during a crime of violence in violation of § 18 U.S.C. § 924(c)(1)(A)(ii) (Counts 3, 5, and 7). *United States v. James Thomas Link*, 1:14-cr-76 (E.D. Va. Feb. 27, 2014) (Indictment). For each § 924(c) count, the indictment specifically identified the predicate "crime of violence" as the preceding § 2113 bank robbery count. For instance, Count 4 alleged that on November 25, 2013, defendant committed a bank robbery, in violation of § 2113(a) & (d). In turn, Count 5 charged defendant with violating § 924(c) for brandishing a firearm during a crime of violence—namely, the robbery charged in Count 4. Similarly, Count 6 charged defendant with a separate § 2113 bank robbery, and Count 7—the accompanying § 924(c) charge—specifically incorporated Count 6 as the underlying "crime of violence" for the § 924(c) offense.

4

On March 20, 2014, defendant pled guilty pursuant to a plea agreement to two counts (Counts 5 and 7) of brandishing a firearm during a crime of violence, in violation of § 924(c). *See United States v. James Thomas Link*, No. 1:14-cr-76 (E.D. Va. Mar. 20, 2014) (Plea Agreement). As the plea agreement explained, the mandatory minimum term of imprisonment for Count 5 was seven years with a maximum term of life imprisonment, and the mandatory minimum term of imprisonment for Count 7 was a consecutive sentence of 25 years, with a maximum of life in prison. The plea agreement further explained that

> [D]efendant understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum described above but that the Court will determine the defendant's actual sentence in accordance with Title 18, United States Code, Section 3553(a). The defendant understands that the Court has not yet determined a sentence and that any estimate of the advisory sentencing range under the U.S. Sentencing Commission's Sentencing Guidelines Manual the defendant may have received from the defendant's counsel, the United States, or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court. Additionally, pursuant to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Court, after considering the factors set forth in Title 18, United States Code, Section 3553(a), may impose a sentence above or below the advisory sentencing range, subject only to review by higher courts for reasonableness. The United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence.

*Id.* at 3.

As part of his plea agreement, defendant also "knowingly waive[d] the right to appeal the conviction and any sentence within the statutory maximum . . . (or the manner in which that sentence was determined) . . . on any ground whatsoever, in exchange for the concessions made by the United States in this plea agreement." *Id.* at 4. Defendant further agreed "to cooperate fully and truthfully with the United States," including by "testify[ing] truthfully and completely at any grand juries, trials or other proceedings." *Id.* at 6. In return, the government agreed "to recommend a sentence no higher than the mandatory minimum term of 32 years" and, upon the

Court's acceptance of defendant's plea, "to move to dismiss the remaining counts of the indictment against this defendant." *Id.* at 4, 6. The plea agreement also provided that if defendant violated any provision of the agreement, the government "will be released from its obligations under th[e] agreement, including any obligation to seek a downward departure [whereas] defendant, however, may not withdraw the guilty plea entered pursuant to this agreement." *Id.* at 11. In addition, the agreement stated that any breach by defendant would amount to a "waive[r of] any right to claim that . . . the statement of facts accompanying this agreement . . . should be excluded or suppressed under Fed R. Evid. 410, Fed R. Crim. P. 11(f), the Sentencing Guidelines or any other provision of the Constitution or federal law." *Id.* at 12.

Defendant's March 20, 2014 plea hearing began with defendant swearing under penalty of perjury to answer truthfully the questions put to him during the plea colloquy. Defendant was then questioned extensively to ensure that his plea of guilty was knowing and voluntary. *See United States v. James Thomas Link*, No. 1:14-cr-76 (E.D. Va. Jun. 19, 2014) (Transcript of Proceedings Held on March 20, 2014). Specifically, defendant was informed of the mandatory minimum terms of imprisonment of seven and twenty five years' imprisonment, to run consecutively, for the two § 924(c) counts to which defendant was pleading guilty. Defendant was also reminded that

> [t]he plea agreement . . . provides that you understand that the Court has the power, the jurisdiction to impose any sentence on you up to the statutory maximum which is life imprisonment for each of the offenses, that you understand that your sentence has not yet been determined. It will be determined by the Court in accordance with the law which provides that the Sentencing Guidelines are advisory, not mandatory as they once were. And any estimate you've received from your counsel or from anybody, those are merely estimates. They are not promises. They are not assurances.

*Id.* at 16. In addition, defendant was further reminded that "there's no other agreement as to how the guidelines might apply to your case." *Id.* at 17.

The Court also directly addressed defendant's agreement with the government regarding

sentence recommendations:

> THE COURT: Now, you and the government have also agreed that the government will not recommend the imposition of any sentence on you above the mandatory minimum for each of the two charges.
>
> MR. LINK: Yes, sir.
>
> THE COURT: What that means is that the government won't recommend more than seven years on Count 5 and 25 years on Count 7 to run consecutively. Do you understand that?
>
> MR. LINK: Yes, sir, Your Honor.
>
> THE COURT: But do you also understand that that agreement you and the government have reached isn't binding on the Court. I could reach a different result.
>
> MR. LINK: Yes, sir, Your Honor.
>
> THE COURT: Now, you understand that even after the Court determines what advisory guideline range applies to your case, that even then, the Court has the power, the authority, to impose a sentence that is either less severe than the guideline range or more severe than the guideline range, but it can never be less than the mandatory minimum of seven years on Count 5 and 25 years consecutively on Count 7. Do you understand that?
>
> MR. LINK: Yes, sir, Your Honor.

*Id.* at 28–29. Additionally, the Court reviewed with defendant the plea agreement's appellate

waiver, as well as defendant's obligation to cooperate "fully and truthfully with the United

States," including by "testify[ing] truthfully and completely at any grand juries, trials, or other

proceedings." *Id.* at 17, 19.

Importantly, defendant stated that he understood the terms of the plea agreement as

summarized by the Court, and he further denied under oath that anyone had "made any other or

different kind of promise or assurance . . . of any kind whatsoever in an effort to induce" a guilty

plea. *Id.* at 26. Defendant was then required to describe in his own words his offense conduct and

confirm that the sworn Statement of Facts attached to his plea agreement was true and accurate

in all respects. *Id.* at 34-35, 39.[3] Based on the plea colloquy, the Court found that defendant's plea was knowing, voluntary, and supported by an independent basis in fact containing each of the essential elements of the offenses charged in Counts 5 and 7. *Id.* at 40. Accordingly,

---

[3] At the plea hearing, defendant admitted that he brandished a firearm while committing both the November 25, 2013 and December 31, 2013 robberies:

> THE COURT: Did you do what's charged in Counts 5 and 7, Mr. Link?
>
> MR. LINK: Yes, sir, Your Honor.
>
> THE COURT: Tell me with respect to Count 5 what you did.
>
> MR. LINK: Count 5, I went into a bank with a gun and robbed it.
>
> THE COURT: Say that again, sir.
>
> MR. LINK: In Count 5, I knowingly went into a gun with a bank [sic] and robbed it.
>
> THE COURT: All right. Was that a Wells Fargo Bank?
>
> MR. LINK: Yes, sir, Your Honor.
>
> THE COURT: And that was what date?
>
> MR. LINK: That was November 25th.
>
> THE COURT: And did you brandish[] your firearm?
>
> MR. LINK: Yes, sir, Your Honor.
>
> THE COURT: What firearm did you brandish?
>
> MR. LINK: I had a 9-millimeter Glock.
>
> THE COURT: All right. And, with respect to Count 7, what did you do?
>
> MR. LINK: Had the same Glock, went into the bank, and I robbed that bank, too, on December the 31st.
>
> THE COURT: And was that a Wells Fargo Bank?
>
> MR. LINK: Yes, sir, Your Honor.
>
> THE COURT: And that -- when you say brandished, what do you mean by brandished?
>
> MR. LINK: I pulled it out.
>
> THE COURT: And showed it to them?
>
> MR. LINK: Yes, sir.

*Id.* at 34-35.

defendant's plea of guilty to Counts 5 and 7 was accepted, and defendant was adjudged guilty of two counts of brandishing a firearm during a crime of violence, in violation of § 924(c). *Id.*

Defendant's sentencing was initially set for June 6, 2014, but on that date defendant requested a continuance to file a motion to withdraw his guilty plea and to request the appointment of new counsel. New counsel was appointed on June 9, 2014, and on June 18, 2014, defendant filed a motion to withdraw his guilty plea. An extensive evidentiary hearing was held, during which defendant, defendant's former counsel, and one of the lead investigators in the case testified. After careful consideration of the testimony and arguments, defendant's motion was denied and a written Order issued. *United States v. James Thomas Link*, No. 1:14-cr-76 (E.D. Va. June 20, 2014) (Order). Defendant appealed the denial of his motion to the Court of Appeals for the Fourth Circuit, but the Court of Appeals affirmed, finding no error. *United States v. Link*, 606 F. App'x. 80 (4th Cir. 2015). This judgment became final on July 9, 2015 with the issuance of the Fourth Circuit's mandate of that date.

After his motion was denied, defendant refused to testify at the trial of his co-defendants, McNeal and Stoddard, in violation of defendant's plea agreement. Consequently, on August 7, 2014, defendant was held in civil contempt, and the government moved to hold defendant in breach of his plea agreement, a motion that was fully briefed. At defendant's September 19, 2014 sentencing hearing, defendant was held in violation of his plea agreement. In response, the government invoked the plea agreement's provision stating that defendant's breach would excuse the government's obligation to recommend the mandatory minimum sentence. Accordingly, the government, rather than seeking the mandatory minimum, pursued a life sentence for defendant's § 924(c) convictions. Ultimately, a sentence of 420 months' imprisonment was imposed on defendant; specifically, defendant received a sentence of 102

months on the first § 924(c) count, and a consecutive sentence of 318 months' imprisonment on the second § 924(c) count.

### C.

On June 26, 2015, the Supreme Court issued its decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), addressing the definition of a "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Specifically, the Supreme Court in *Johnson* held that the ACCA residual clause in § 924(e)(2)(B)(ii) defining a "violent felony" as including an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another" is unconstitutionally vague, and therefore that "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. Thereafter, on April 18, 2016, the Supreme Court held that *Johnson* announced a new "substantive rule that has retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

On June 17, 2016, shortly after the Supreme Court's decision in *Welch*, defendant filed a timely motion[4] pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentences and convictions on both § 924(c) counts, asserting two grounds:

- First, defendant contends that the Court committed a "sentencing miscalculation" and imposed an "incorrect sentence" under the terms of his plea agreement because "a mandatory minimum sentence upon a plea of guilty was . . . <u>32 years' imprisonment</u> (384 months)", whereas defendant

---

[4] Section 2255(f)(1) establishes a year-long window from the date a defendant's conviction becomes final in which a defendant may file a § 2255 motion. 18 U.S.C. § 2255(f)(1).

"was sentence [sic] to <u>102 months</u> on <u>Count 5</u> and <u>318 months</u> on <u>Count 7</u>— total of <u>420</u> months of incarceration." Def. Mot. at 4.

- Second, defendant argues that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), operates to invalidate § 924(c)'s residual clause and thus, by extension, defendant's § 924(c) convictions. *Id.* at 5.

On July 13, 2016, the government submitted a response, contending that defendant's "sentencing miscalculation" claim fails because such a claim is not cognizable under § 2255, and is independently barred by the doctrine of procedural default. The government also challenges defendant's *Johnson* claim, arguing that defendant's convictions and sentences are based not on § 924(c)'s residual clause, but on § 924(c)'s force clause, a provision neither addressed nor affected by the *Johnson* decision.

## II.

The first ground defendant cites in support of his § 2255 motion is "Sentencing miscalculation, incorrect sentence in accordance to the guilty plea agreement." Def. Mot. at 5. This claim may be construed in three ways: (i) that defendant was entitled by statute to the mandatory minimum, and thus defendant's sentence—which is 36 months above the statutory minimum—constitutes error; (ii) that the Court erred in calculating the proper terms of imprisonment; or (iii) that the government breached the plea agreement by failing to recommend the mandatory minimum, and therefore defendant's guilty plea and sentences are void. All of these arguments fail.

## A.

To begin with, the government contends that the doctrine of procedural default bars defendant's "sentencing miscalculation" claim, however that claim is construed. The government correctly asserts that because defendant did not raise his claim of "sentencing miscalculation" on direct appeal, he may not raise this claim on a subsequent § 2255 motion.

On collateral review, the doctrine of procedural default generally bars claims that "could have been but were not pursued on direct appeal." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010). Defendant's claim is barred because the claim of "sentencing miscalculation" could have been "fully and completely addressed on direct review based on the record created at the plea colloquy" and at sentencing, and therefore should have been raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

To be sure, a procedural default "may be excused in two circumstances: where a person attacking his conviction can establish (1) that he is "actually innocent" or (2) that "cause" for the default exists and that "prejudice result[ed] therefrom." *United States v. Fugit*, 703 F.3d 248, 253 (4th Cir. 2012). Neither of these two elements applies here because defendant has not raised— and cannot raise—a claim of "actual innocence," and because defendant has not shown—and cannot show—cause for his default or prejudice resulting therefrom. This is so because, as the analysis that follows demonstrates, defendant's claim is meritless.

Seeking to avoid this result, defendant notes in his § 2255 motion that he did not raise the issue of a "sentencing miscalculation" on direct appeal because his "attorney refuse[d] to address [the] issue after my request." Def. Mot. at 5. Although this statement may be construed liberally to assert a Sixth Amendment claim of ineffective assistance of counsel, such a claim would necessarily fail pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). An ineffective

assistance claim requires defendant to show that his "counsel's representation fell below an objective standard of reasonableness" and resulting "prejudice." *Id.* at 688. Because, as the following analysis reveals, defendant's "sentencing miscalculation" claim is meritless, defense counsel's representation did not run afoul of the constitutional right to effective counsel.[5]

## B.

Defendant's "sentencing miscalculation" claim may be construed as a contention that (i) defendant was entitled by statute to the mandatory minimum sentence or (ii) the Court erred in calculating the proper terms of imprisonment. In either case, defendant's claim fails, both because such arguments are not cognizable on a § 2255 motion, and because both contentions fail on the merits.

To begin with, defendant's challenge to the calculation of the guidelines range or the reasonableness of the sentence imposed within statutory limits is not cognizable on a § 2255 motion. Section 2255 "by its terms . . . does not allow for a court's consideration and correction of *every* alleged sentencing error." *United States v. Foote*, 784 F.3d 931, 936 (4th Cir. 2015). Instead, the statute "provides four avenues by which a petitioner can seek relief":

> [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack . . . .

---

[5] The government also argues that, had defendant raised his "sentencing miscalculation" claim on direct appeal, his claim would have been barred by the appellate waiver in defendant's plea agreement. Although this contention need not be resolved here, it appears that the government's argument conflicts with the Fourth Circuit's decision in *United States v. Brown*, 99 F.3d 1131, 1996 WL 607084 (4th Cir. 1996) (unpublished table decision). There, the defendant failed to honor his obligations under his plea agreement, and the government responded by refusing to honor its obligation to recommend a lower sentence. *Id.* The Fourth Circuit found that the plea agreement's appellate waiver was "inoperative" in light of "the parties' mutual breach of the agreement." *Id.* at 1131 n.1.

28 U.S.C. § 2255(a). If the purported sentencing error raised in a § 2255 motion "is neither constitutional or jurisdictional," a district court lacks authority to review the alleged error "unless [the error] amounts to a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Foote*, 784 F. 3d at 936 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). This is a "remarkably high bar" met "only when a court is presented with 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Id.* (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

In this regard, the Supreme Court has held that a defendant may not collaterally attack his sentence where "[t]here is no claim of a constitutional violation; the sentence imposed was within the statutory limits; and the proceeding was not infected with any error of fact or law of the 'fundamental' character that renders the entire proceeding irregular and invalid." *United States v. Addonizio*, 442 U.S. 178, 186 (1979). Importantly, a "misapplication of the sentencing guidelines does not amount to a miscarriage of justice" unless the error causes the sentencing court to impose a sentence exceeding the statutory maximum. *Foote*, 784 F.3d at 939 (quoting *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999)); *see also, e.g., United States v. Pregent*, 190 F.3d 279, 284 (4th Cir. 1999). Accordingly, § 2255 generally provides no relief based on an alleged sentencing error to a defendant who receives a sentence within the statutory maximum. *See, e.g., Pregent*, 190 F.3d at 284; *Milan v. United States*, 57 F. Supp. 3d 571 (E.D. Va. 2014); *Jones v. United States*, No. 4:09-cr-81-BO, 2012 WL 4432675, at *1–*2 (E.D.N.C. Sept. 24, 2012).

These principles, applied here, make it quite clear that defendant's claim of "sentencing miscalculation"—interpreted either as a claim that defendant should have received the mandatory minimum sentence or that his sentence was "miscalculated"—is not cognizable under

14

§ 2255. The statutory maximum for both of defendant's § 924(c) convictions is life imprisonment. 18 U.S.C. § 924(c)(1)(A)(ii) (imposing "a term of imprisonment of *not less than* 7 years") (emphasis added); *id.* § 924(c)(1)(C) ("In the case of a second or subsequent conviction under this subsection, the [defendant] shall . . . (ii) be sentenced to a term of imprisonment of *not less than* 25 years[.]") (emphasis added). Thus, although the sentencing guidelines range was "the minimum term of imprisonment required by statute" because defendant was sentenced only on § 924(c) convictions,[6] both sentences imposed on defendant were within § 924(c)'s statutory limit. Simply put, there was no fundamental error of fact or law in the imposition of defendant's sentences—indeed, there was no error whatsoever—as would be necessary to render defendant's "sentencing miscalculation" claim cognizable on a § 2255 motion. *Addonizio*, 442 U.S. at 186 (internal quotation marks omitted).

Even assuming, *arguendo*, that either of these interpretations of defendant's "sentencing miscalculation" claim clears the hurdles described above, defendant's claim nevertheless fails on the merits. Put simply, there was no miscalculation of the guidelines range, which, pursuant to U.S.S.G. § 2K2.4(b), was the mandatory minimum term of imprisonment required by § 924(c).[7] Thus, defendant is entitled to no relief on his "sentencing miscalculation" claim, as construed *supra*.

---

[6] U.S.S.G. § 2K2.4(b).

[7] Moreover, defendant's sentences, which when combined amount to 36 months above the statutory minimum and guidelines range, were both adjudged by reference to 18 U.S.C. § 3553, with the advisory guidelines being one factor taken into account in the § 3553 analysis. *United States v. James Thomas Link*, No. 1:14-cr-76 (E.D. Va. Sept. 19, 2014) (Judgment). Even if there were a guidelines calculations error, the Fourth Circuit has held that "a district court's error in its sentencing calculations is harmless" where "the court also provided justification for the sentence based on the § 3553(a) sentencing factors." *Foote*, 784 F.3d at 941.

## C.

Alternatively, defendant's "sentencing miscalculation" claim may be construed as an argument that the government breached the plea agreement by failing to recommend the mandatory minimum sentence in accordance with the plea agreement, and that as a result, defendant's sentence and guilty plea are void. Even when viewed through this lens, defendant's claim fails.

It is well settled that the government may renege on its promise in a plea agreement to recommend a certain sentence if the district court first determines that the defendant breached an obligation under that agreement. *See, e.g., United States v. Simmons*, 537 F.2d 1260, 1261 (4th Cir. 1976); *United States v. Snow*, 234 F.3d 187, 189 (4th Cir. 2000); *United States v. Brown*, 99 F.3d 1131, 1996 WL 607084 (4th Cir. 1996) (unpublished table decision); *Santobello v. New York*, 404 U.S. 257 (1971). As the Fourth Circuit in *Simmons* held, "[I]n a plea bargain the government's obligation to make a recommendation arises only if defendant performs his obligation[.]" 537 F.2d at 1261. Thus, in a case similar to the one at bar, the Fourth Circuit held that a defendant was "not entitled to resentencing" on the basis that the government breached an obligation "to recommend a sentence at the low end of the guidelines range" where "the government's breach was triggered by [the defendant]'s own failure to honor his obligations under the agreement." *Id.*

Here, it is abundantly clear that defendant's claim, when construed as challenging the government's failure to recommend the mandatory minimum sentence, is baseless. The Court found defendant in breach of his plea agreement because, as the evidence overwhelmingly demonstrated, defendant flouted his obligation to cooperate fully with the government by refusing to testify at his co-defendants' trial. Importantly, the government's motion to hold

defendant in breach was adjudged after the matter was fully briefed and the parties were afforded the opportunity to present oral arguments. As a result, it was not improper for the government to recommend a term of life imprisonment at defendant's sentencing.[8]

In summary, defendant's first ground for his § 2255 motion, however construed, must fail.

### III.

Defendant's second ground for his § 2255 motion is the Supreme Court's decision in *Johnson*, which, according to defendant, operates to invalidate § 924(c)'s residual clause and, by extension, defendant's § 924(c) convictions. Specifically, defendant asserts that his § 924(c) convictions depend on § 924(c)'s residual clause, which defendant argues is unconstitutional in light of *Johnson*. Thus, defendant contends that his § 924(c) convictions fail to pass constitutional muster.

Assuming without deciding that the Supreme Court's decision in *Johnson* implicates § 924(c)'s residual clause,[9] defendant's claim fails on the merits. This is so because the predicate "crime of violence" for each of defendant's § 924(c) convictions is bank robbery in violation of § 2113(a) & (d), which undoubtedly constitutes a crime of violence pursuant to § 924(c)'s force clause, rather than § 924(c)'s residual clause. *See United States v. McNeal*, 818 F.3d 141, 157

---

[8] Of course, the government's recommendation was not adopted, as defendant received a total sentence of 420 months' imprisonment.

[9] There is significant doubt whether *Johnson* operates to invalidate § 924(c)'s residual clause, which is worded differently from ACCA's residual clause set forth in § 924(e). Although the Fourth Circuit has recently heard oral argument on the issue and has yet to issue an opinion, the other circuits that have squarely addressed this question have concluded that *Johnson* does not invalidate § 924(c)'s residual clause. *See United States v. Hill*, --- F.3d ---, 2016 WL 4120667, at *8 (2d Cir. Aug. 3, 2016); *United States v. Taylor*, 814 F.3d 340, 375-76 (6th Cir. 2016).

(4th Cir. 2016).[10] Indeed, defendant was initially indicted on three counts of § 2113 bank robbery—which were dismissed after defendant agreed to plead guilty to two counts of brandishing a firearm during a crime of violence—and a jury convicted defendant's co-defendant, Stoddard, on each of those same § 2113 counts. *See McNeal*, 818 F.3d 141.

Importantly, defendant need not have been *convicted* of the predicate crimes of violence for his § 924(c) convictions to stand. *United States v. Carter*, 300 F.3d 415, 425 (4th Cir. 2002). It is instead sufficient if a jury "could theoretically have convicted on the predicate . . . offense[.]" *Id.* In other words, where, as here, an indictment charges both (i) a § 924(c) count and (ii) a count on the predicate crime of violence—bank robbery in violation of §§ 2113(a) & (d)— the defendant may properly be convicted of violating § 924(c) so long as there is no "affirmative acquittal" on the accompanying bank robbery count. *See id.* Indeed, as the Second Circuit recently observed, "Every circuit court to have considered the issue has concluded that § 924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." *Johnson v. United States*, 779 F.3d 125, 130 (2d Cir. 2015).[11] This consensus is unsurprising, because the plain language of § 924(c) requires only that the predicate crime of violence have been

---

[10] *McNeal* was decided on direct appeal brought by Link's co-defendants, McNeal and Stoddard, following a jury trial and convictions arising from the same bank robberies that defendant admitted to having committed.

[11] Not surprisingly, the Second Circuit joined that consensus. *See Johnson*, 779 F.3d at 130 (citing *United States v. Lake*, 150 F.3d 269, 275 (3d Cir. 1998); *Carter*, 300 F.3d at 425 (4th Cir. 2002); *United States v. Munoz–Fabela*, 896 F.2d 908, 911 (5th Cir. 1990); *United States v. Nelson*, 27 F.3d 199, 200 (6th Cir. 1994); *Myers v. United States*, 993 F.2d 171, 172 (8th Cir. 1993); *United States v. Hunter*, 887 F.2d 1001, 1003 (9th Cir. 1989); *United States v. Hill*, 971 F.2d 1461, 1467 (10th Cir. 1992) (en banc); *United States v. Frye*, 402 F.3d 1123, 1127–28 (11th Cir. 2005)).

*committed*, not that a judgment of conviction be entered for that crime. *See, e.g.*, 18 U.S.C. 924(c)(1)(A); *Carter*, 300 F.3d at 425; *Johnson*, 779 F.3d at 129-30.

In the context of this case, the underlying crimes of violence for defendant's two § 924(c) convictions are two separate § 2113 bank robberies. This is so because each § 924(c) count to which defendant pled guilty—Counts 5 and 7—specifically identified as the predicate "crime of violence" a bank robbery that defendant committed in violation of § 2113(a) & (d).[12] Importantly, there is no doubt that a reasonable jury could have theoretically convicted defendant of the predicate § 2113 counts. As the Fourth Circuit observed in *McNeal*, armed bank robbery requires, in relevant part, (i) that "the defendant took . . . money belonging to, or in the custody, care, or possession of, a bank"; (ii) "by force and violence, or by intimidation"; and (iii) that "in committing or attempting to commit the offense, the defendant assaulted any person, or put in jeopardy the life of any person, by the use of a dangerous weapon or device." 818 F.3d at 152.[13] Simply put, the sworn Statement of Facts accompanying defendant's plea agreement provides abundant proof that defendant, in fact, committed the predicate bank robberies, in violation of § 2113(a) & (d).

Regarding defendant's guilty plea on Count 5—which alleged a violation of § 924(c) with respect to defendant's November 25, 2013 bank robbery—defendant admitted the following facts: (i) defendant and Stoddard entered the bank lobby, at which point defendant brandished a

---

[12] These bank robberies were charged in Counts 4 and 6, respectively. Of course, the underlying bank robbery counts were dismissed after defendant pled guilty to two § 924(c) counts and agreed to cooperate with the government by, *inter alia*, testifying as a witness in future proceedings. Because defendant refused to testify at his co-defendants' trial, however, defendant was held in civil contempt. *See supra* Part I.B.

[13] There is no question that the banks at issue were federally insured, which is a jurisdictional element in § 2113. *See McNeal*, 818 F.3d 141; *United States v. James Thomas Link*, No. 1:14-cr-76 (E.D. Va. Nov. 21, 2014) (Transcript of Proceedings on August 7, 2014).

19

firearm; (ii) with that firearm in hand, defendant ordered the customers and employees in the bank to the ground; (iii) Stoddard then jumped the teller counter and ordered the employees to the ground at gunpoint; (iv) once he was behind the counter, Stoddard put just over $19,000 into a bag; and (v) Stoddard and defendant pushed an 82-year-old woman to the ground as the two robbers left the bank with the cash. *United States v. James Thomas Link*, No. 1:14-cr-76 (E.D. Va. Mar. 20, 2014) (Statement of Facts). Regarding defendant's guilty plea to Count 7—which alleged a violation of § 924(c) with respect to defendant's December 31, 2013 bank robbery— defendant admitted the following: (i) defendant and Stoddard entered the bank, at which point defendant produced a handgun; (ii) Stoddard, wearing a scarf over his face, then jumped over the teller counter; (iii) Stoddard removed almost $48,000 from the teller drawers; and (iv) once Stoddard had removed the cash, he and defendant fled the bank on foot and got into a vehicle with McNeal to attempt to drive away. *Id.* Indeed, at his plea colloquy defendant stated that he brandished a firearm during the commission of both bank robberies.

In light of these facts, it is clear that ample grounds exist for a reasonable jury theoretically to have convicted defendant on both counts of armed bank robbery in violation of §§ 2113(a) & (d), as charged in the original indictment. *See Carter*, 300 F.3d at 425. Thus, the underlying "crimes of violence" on which defendant's § 924(c) convictions depend are two § 2113 bank robberies.

Given that defendant's underlying offenses for his § 924(c) convictions are § 2113 bank robberies, the § 2255 motion with respect to defendant's *Johnson* claim must fail. This is so because defendant's argument—that defendant's bank robbery offenses fall under § 924(c)'s residual clause, rather than on § 924(c)'s force clause—is foreclosed by the Fourth Circuit's decision in *McNeal*. Indeed, the Fourth Circuit in *McNeal* squarely held that bank robbery in

20

violation of §§ 2113(a) & (d) is a "crime of violence" pursuant to § 924(c)'s force clause, and thus the Supreme Court's decision in *Johnson* is inapposite. 818 F.3d at 157.

Specifically, the Fourth Circuit concluded in *McNeal* that bank robbery in violation of §§ 2113 (a) & (d) is

> a "crime of violence" within the meaning of the force clause of 18 U.S.C. § 924(c)(3), because it "has as an element the use, attempted use, or threatened use of physical force"—specifically, the taking or attempted taking of property "by force and violence, or by intimidation."

*Id.* (quoting 18 U.S.C. § 924(c)(3)(A)). This is true, the Fourth Circuit held, even where the robbery occurred solely "by intimidation," because intimidation "requires the threatened use of physical force" and thereby "constitutes a crime of violence under the force clause of § 924(c)(3)." *Id.* at 153. Furthermore, in concluding that bank robbery in violation of §§ 2113(a) & (d) constitutes a crime of violence under § 924(c)'s force clause, the Fourth Circuit noted that the Supreme Court's decision in *Johnson* was inapplicable. In this regard, the Fourth Circuit observed that because § 2113 bank robbery falls under § 924(c)'s force clause, it was unnecessary to consider what effect, if any, *Johnson* might have on § 924(c)'s residual clause. *Id.* at 152 n.8 ("Because § 2113(a) bank robbery satisfies the § 924(c)(3) force clause, we do not consider whether *Johnson* renders the § 924(c)(3) residual clause unconstitutionally vague."). Therefore, defendant's contention that *Johnson* invalidates his § 924(c) convictions is meritless.

In summary, because defendant's § 924(c) convictions were predicated on bank robbery offenses that constitute crimes of violence pursuant to § 924(c)'s force clause, *Johnson* does not apply and defendant's § 2255 motion must fail.

## IV.

Accordingly, defendant's § 2255 motion must be denied. Specifically, defendant's first claim of "sentencing miscalculation" is (i) barred by the doctrine of procedural default, (ii) not

cognizable, and (iii) meritless. Defendant's second claim involving the Supreme Court's decision in *Johnson* also fails, because (i) defendant's predicate crimes of violence fall within § 924(c)'s force clause and (ii) as a result, *Johnson* is inapposite to defendant's § 924(c) convictions.

An appropriate Order will issue.

Alexandria, Virginia
October 11, 2016

/s/

T. S. Ellis, III
United States District Judge